ROB BONTA
Attorney General of California
DAVID A. ZONANA
Supervising Deputy Attorney General
SOMERSET PERRY, SBN 293316
HEATHER M. LEWIS, SBN 291933
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA  94612-0550
  Telephone:  (510) 879-1008
  Fax:  (510) 662-2270
  E-mail:  Somerset.Perry@doj.ca.gov
  E-mail:  Heather.Lewis@doj.ca.gov
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL** and the **TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT C. FROJEN AND COLLEEN FROJEN TRUST, COLLEEN FROJEN, individually and as trustee on behalf of the ROBERT C. FROJEN AND COLLEEN FROJEN TRUST, ROBERT WINTERS, an individual, and PCA METAL FINISHING, INC., a dissolved California corporation,**<br><br>Defendants. | Case No. 8:22-CV-1272<br><br>**COMPLAINT FOR RECOVERY OF RESPONSE COSTS and DECLARATORY RELIEF (42 U.S.C. §§ 9607(a) and 9613(g)(2))** |

    Plaintiffs, the California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively "Plaintiffs") allege as follows:

## STATEMENT OF THE CASE

1. This is a civil action brought by Plaintiffs against the Robert C. Frojen and Colleen Frojen Trust and affiliated sub-trusts, Colleen Frojen, as an individual and as trustee of the Robert C. Frojen and Colleen Frojen Trust and affiliated sub-trusts, Robert Winters, and PCA Metal Finishing, Inc. (collectively, "Defendants") under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for the recovery of unreimbursed response costs that Plaintiffs have incurred, and interest on such response costs, in connection with releases and threatened releases of hazardous substances at, beneath, above, and/or from the property located at 1702 East Rosslynn Avenue, Fullerton, California 92831, identified by Assessor's Parcel Number 033-270-30 ("the Site").

2. Plaintiffs further make a claim for declaratory relief, under 28 U.S.C § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that Defendants are jointly and severally liable to Plaintiffs for the response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future as a result of any release or threatened release of a "hazardous substance," as defined in CERCLA section 101(14), 42 U.S.C. § 9601(14), at the Site.

## JURISDICTION AND VENUE

3. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases and threatened releases of hazardous substances that are at issue occurred in this judicial district.

## PLAINTIFFS

5. DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code sections 58009 and 58010. DTSC is responsible under state law for determining whether there has been a release and/or threatened release of a hazardous substance into the environment and for responding to releases and/or threatened releases of hazardous substances.

6. The Toxic Substances Control Account is an account within the State of California General Fund. California Health and Safety Code section 25173.6 establishes the account and the Director of DTSC administers the account. Under California Health and Safety Code section 25361(a), the account shall be a party in any action for the recovery of response costs or expenditures under Chapter 6.8 of Division 20 of the California Health and Safety Code that were incurred by DTSC from the account.

## DEFENDANTS

7. The Robert C. Frojen and Colleen Frojen Trust and affiliated sub-trusts (collectively, "Frojen Trust") are: the Frojen Family Trust UDT October 19, 2000, aka the Robert C. Frojen and Colleen Frojen Trust dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Marital Share) dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Bypass Share) dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Survivor's Share) dated October 19, 2000. Frojen Trust has owned the Site since 2001. Frojen Trust is an "owner" of a facility under CERCLA section 107(a)(1), 42 U.S.C. § 9607(a)(1). The Frojen Trust was also an "owner" of a facility at the time of disposal of hazardous substances under CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

8. Colleen Frojen is a citizen of California who resides in Los Angeles County. Frojen is Trustee of the Frojen Trust. Frojen individually held an ownership interest in the Site from approximately 1978 to 2001. In her capacity as Trustee, Frojen is an "owner" of a facility under CERCLA section 107(a)(1), 42

1 U.S.C. § 9607(a)(1). In her capacity as Trustee and individually, Frojen was also an "owner" of a facility at the time of disposal of hazardous substances under CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

9. PCA Metal Finishing, Inc. ("PCA") is a dissolved corporation that had its principal place of business in Fullerton, California. From approximately 1980 to 2007, PCA operated as a metal plating facility on the eastern portion of the Site. PCA was an "owner and operator" of facility under section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1). PCA was also an "owner" and/or "operator" of a facility at the time of disposal of hazardous substances under CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

10. Robert Winters is a citizen of California who resides in Orange County. Winters owned PCA from approximately 1997 to 2014. Winters was an "owner" and/or "operator" of a facility under CERCLA section 107(a)(1), 42 U.S.C. § 9607(a)(1). Winters was also an "owner" and/or "operator" of a facility at the time of disposal of hazardous substances under CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

**THE SITE**

11. The Site is located at 1702 East Rosslynn Avenue, Fullerton, California 92831, identified by Assessors' Parcel Number 033-270-30. Other addresses associated with the Site include 1711, 1723, and 1725 East Kimberly Avenue, Fullerton, California 92831 and 1700, 1704, 1706, 1710, 1712, 1718, 1720, 1724, and 1726 East Rosslynn Avenue, Fullerton, CA 92831.

12. The Site occupies approximately 2.3 acres. The former PCA facility occupied the eastern side of the Site, while Orange County Metal Processing occupied the western side of the Site.

13. Defendant Frojen Trust has owned the Site since 2001. Defendant Colleen Frojen, as an individual, held an ownership interest in the Site from approximately 1978 to 2001.

14. From approximately 1980 to 2007, PCA operated as a metal finishing and plating facility on the eastern portion of the Site. PCA was a "facility" as that term is used in section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

15. From approximately 1976 to 2011, Orange County Metal Processing ("OCMP") operated as a metal plating and finishing business on the western portion of the Site. OCMP was a "facility" as that term is used in section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

**PCA'S OPERATIONS ON THE EASTERN PORTION OF THE SITE**

16. PCA's operations primarily consisted of chrome and nickel plating of automobile and motorcycle parts and wheels. PCA used chromium, copper, nickel, zinc, cyanide compounds, trichloroethylene ("TCE") and tetrachloroethylene ("PCE"), among other hazardous substances, in its metal finishing and plating and related operations.

17. As a result of PCA's operations, hazardous substances within the definition of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), were released into the environment at and from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22). These hazardous substances include chromium, copper, nickel, zinc, cyanide compounds, TCE, and PCE that have been identified in the soil and/or groundwater at the Site.

18. DTSC conducted an inspection of PCA on August 23 and 24, 2005. At the conclusion of the inspection, DTSC staff provided PCA staff with a summary of violations of the California Hazardous Waste Control Law, which included failure to properly label hazardous waste, failure to maintain emergency equipment, improper containment of the wastewater treatment system, and failure to minimize the possibility of a release to the environment.

19. PCA ceased plating operations at the Site in or around 2007, and thereafter undertook closure activities overseen by the Orange County Health Care Agency and DTSC.

COMPLAINT

20. Mr. Winters and PCA entered into a Corrective Action Consent Agreement with DTSC on June 28, 2007, which required Mr. Winters and PCA to perform further investigation of the eastern portion of the Site under DTSC's oversight, and to pay DTSC's costs incurred in the implementation of the Consent Agreement.

21. DTSC conducted another inspection of PCA on August 10, 2007. During the inspection, DTSC staff observed chemical stains, discoloration, and etching on the floors and/or walls in several areas of the facility, including the new and old plating areas, bulk chemical storage area, wastewater treatment system area, nitric acid stripping area, paint stripping area, and polishing area. After the inspection DTSC determined that further investigation was needed to determine the extent of the releases of hazardous substances.

22. On May 24, 2012, DTSC issued an Imminent and/or Substantial Endangerment Determination ("ISE Determination") for the eastern portion of the Site where PCA formerly operated. The ISE Determination found that the former PCA site was contaminated with hazardous substances including TCE and PCE. The ISE Determination concluded that a response action was necessary because PCE and TCE were present in the groundwater and/or soil gas in sufficient concentrations to pose a substantial danger to public health and the environment.

**OCMP'S OPERATIONS ON THE WESTERN PORTION OF THE SITE**

23. OCMP was owned and operated by Manuel Reynoso. DTSC filed a complaint against Mr. Reynoso in this Court for recovery of response costs on January 26, 2022 (Case No. 8:22-cv-00136-DSF-KES).

24. Plaintiffs are informed and believe, and based on such information and belief allege, that Mr. Winters was the master lessee of the Site, and sub-leased the western portion of the Site to Mr. Reynoso.

25. OCMP's operations primarily consisted of finishing and coating metal parts used by automobile and computer manufacturers. OCMP used chromium,

cadmium, zinc, and solvent metal degreasers including TCE and PCE, among other hazardous substances, in its metal finishing and plating, and related operations.

26. As a result of OCMP's operations, hazardous substances within the definition of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), were released into the environment at and from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22). These hazardous substances include hexavalent chromium, cadmium, copper, zinc, cyanide compounds, PCE, and TCE that have been identified in the soil and/or groundwater at the Site.

27. DTSC conducted an inspection of OCMP on September 20, 2007. During the inspection, DTSC staff observed chemical stains and discoloration on the floor near the zinc plating line; rusted tanks with chemical residue on the tank sides in the cadmium plating line; tanks that were partially dissolved by chemicals, leaving an uneven, jagged edge; and wet and/or oily floors in a storage area and beneath cadmium plating line tanks. After the inspection DTSC determined that further investigation was needed to determine the extent of the releases of hazardous substances.

28. DTSC and Mr. Reynoso entered into a Corrective Action Consent Agreement on March 5, 2009, which required Mr. Reynoso to perform further investigation of the western portion of the Site under DTSC's oversight, and to pay DTSC's costs incurred in the implementation of the Consent Agreement.

29. On August 22, 2011, DTSC issued an Imminent and/or Substantial Endangerment Determination for the western portion of the Site where OCMP operated. The ISE Determination found that the OCMP site was contaminated with hazardous substances including cadmium, PCE, and TCE. The ISE Determination concluded that a response action was necessary because there may be a significant public health risk to employees and occupants of the buildings at the Site.

**DTSC RESPONSE ACTIONS AT THE SITE**

30. Beginning in 2011 and continuing through May 2015, DTSC conducted remedial investigations into the soil, soil vapor, and groundwater conditions at the Site. These actions included collecting and analyzing samples of soil, soil gas, and groundwater; monitoring groundwater; and implementing a soil vapor extraction pilot study.

31. On May 28, 2015, DTSC approved a Feasibility Study / Remedial Action Plan ("FS/RAP") for the Site.

32. From 2015 to present, DTSC has implemented the remedial actions identified in the FS/RAP, including soil excavation, installation of pilot systems of in-situ chemical oxidation for treating groundwater and soil vapor extraction, and ongoing monitoring.

33. Based on the above, from 2011 until the present, DTSC has taken "response" actions at the Site, as that term is defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the release and/or threatened release of hazardous substances at the Site. The response actions include, but are not limited to, investigations of soil, soil vapor, and groundwater, development of the FS/RAP, soil excavation, pilot studies of groundwater treatment and soil vapor extraction, and ongoing monitoring.

34. As a result of DTSC's response actions at the Site, Plaintiffs have incurred response costs related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.

35. Plaintiffs unpaid costs related to the Site from 2007 through December 2021 total $8,334,444, exclusive of interest. These unpaid costs include $4,198,744 for the eastern portion of the Site where PCA operated, and $4,135,700 for the western portion of the Site where OCMP operated.

36. Plaintiffs have incurred and expect to continue to incur additional response costs related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.

# FIRST CLAIM FOR RELIEF

## (Cost Recovery Claim Pursuant to Section 107(a) of CERCLA)

37. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

38. The Site, and the horizontal and vertical extent of the hazardous substance contamination caused by releases of hazardous substances from the Site, including, without limitation, any area where any hazardous substance from the Site has come to be located, is a "facility" within the meaning of section 101(9)(A) and (9)(B) of CERCLA, 42 U.S.C. § 9601(9)(A), (9)(B).

39. Each Defendant is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

40. DTSC, in its capacity as an agency of the State of California, is a "State" for purposes of recovery of response costs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

41. Each Defendant is an "owner" and/or "operator" of the Site, and was an "owner" and/or "operator" of the Site "at the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

42. The hazardous substances disposed and/or treated at the Site contained, without limitation, compounds that can migrate through groundwater, including, but not limited to, the following: chromium, cadmium, copper, nickel, zinc, cyanide compounds, PCE, and TCE. These substances, which are present at the Site, are "hazardous substances," which are defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14). There has been a "release" or threatened release of hazardous substances, including but not limited to those included in this paragraph, from the Site into the "environment," within the meaning of sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22).

43. Plaintiffs have incurred response costs not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, resulting from the releases or threatened releases of hazardous substances from the Site, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25). These response costs include, but are not limited to, costs to monitor, assess, evaluate, and/or respond to the release and/or threatened release of hazardous substances at the Site, as defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25). Plaintiffs are continuing to incur such costs, and Plaintiffs will continue to incur such costs in the future.

44. Defendants are jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for Plaintiffs' responses costs resulting from the release or threat of release of hazardous substances from the Site.

45. Pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are also liable for interest accrued on Plaintiffs' response costs.

## SECOND CLAIM FOR RELIEF

**(Claim for Declaratory Relief Pursuant to Section 113(g)(2) of CERCLA)**

46. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

47. Under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for any responses costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For a judgment that each Defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all costs of response, removal, and remedial actions, including, but not limited to, implementation and oversight costs, incurred

by Plaintiffs and resulting from release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from the Site;

    2. For a declaration that each Defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all future costs, including implementation and oversight costs, incurred by Plaintiffs as the result of any release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from the Site;

    3. For Plaintiffs' costs of suit;

    4. For Plaintiffs' attorneys' fees;

    5. For prejudgment interest; and

    6. For such other and further relief as the court deems just and proper.

Dated: July 6, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
DAVID A. ZONANA
Supervising Deputy Attorney General

*/s/ Heather M. Lewis*

HEATHER M. LEWIS
SOMERSET PERRY
Deputy Attorneys General
*Attorneys for Plaintiffs
California Department of Toxic Substances Control and the Toxic Substances Control Account*