JS-6

1  ROB BONTA
   Attorney General of California
2  DAVID A. ZONANA
   Supervising Deputy Attorney General
3  SOMERSET PERRY, SBN 293316
   HEATHER M. LEWIS, SBN 291933
4  Deputy Attorneys General
     1515 Clay Street, 20th Floor
5    P.O. Box 70550
     Oakland, CA  94612-0550
6    Telephone:  (510) 879-0852
     Fax:  (510) 622-2270
7    E-mail:  Somerset.Perry@doj.ca.gov
   *Attorneys for Plaintiffs*
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14  **CALIFORNIA DEPARTMENT OF**          Case No. 8:22-cv-01272 DSF (KESx)
    **TOXIC SUBSTANCES CONTROL**
15  **and CALIFORNIA TOXIC**
    **SUBSTANCES CONTROL**              CONSENT DECREE BETWEEN
16  **ACCOUNT,**                        PLAINTIFFS AND DEFENDANTS
                                        COLLEEN FROJEN, individually and
17                        Plaintiffs,   as trustee on behalf of the ROBERT C.
                                        FROJEN AND COLLEEN FROJEN
18           **v.**                     TRUST, ROBERT WINTERS, an
                                        individual, and PCA METAL
19  **ROBERT C. FROJEN AND**            FINISHING, INC., a dissolved
    **COLEEN FROJEN TRUST,**            California corporation.
20  **COLLEEN FROJEN, individually**
    **and as trustee on behalf of the**
21  **ROBERT C. FROJEN AND**
    **COLLEEN FROJEN TRUST,**
22  **ROBERT WINTERS, an individual,**
    **and PCA METAL FINISHING, INC.,**
23  **a dissolved California corporation,**

24                        Defendants.

25

26  **I.    INTRODUCTION**

27          1.   Concurrently with the lodging of this Consent Decree, Plaintiffs the State

28  of California Department of Toxic Substances Control ("DTSC") and the Toxic

                                        1

1  Substances Control Account (collectively, "Plaintiffs") are filing a complaint in this

2  matter pursuant to the Comprehensive Environmental Response, Compensation,

3  and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. ("Complaint") against

4  Defendants the Robert C. Frojen and Collen Frojen Trust and affiliated sub-trusts

5  (collectively, "Frojen Trust"),[1] Colleen Frojen, as an individual and as trustee of the

6  Frojen Trust, Robert Winters, and PCA Metal Finishing, Inc. ("PCA") as defined

7  below (hereinafter collectively "Settling Defendants"). In the Complaint, Plaintiffs

8  seek to recover costs they incurred responding to releases and/or threatened releases

9  of hazardous substances at or from the property located at 1711, 1723, and 1725 E.

10  Kimberly Avenue, Fullerton, California 92831 and 1700, 1702, 1704, 1706, 1710,

11  1712, 1718, 1720, 1724, and 1726 E. Rosslynn Avenue, Fullerton, CA 92831,

12  identified by Assessor's Parcel Number 033-270-30 ("the Site"). Plaintiffs also

13  seek a declaratory judgment under CERCLA section 113(g)(2), 42 U.S.C. §

14  9613(g)(2), that each Defendant is jointly and severally liable to Plaintiffs for the

15  response costs Plaintiffs have incurred, and for any further response costs Plaintiffs

16  incur in the future as a result of any release or threatened release of a hazardous

17  substance at the Site.

18      2.   In the Complaint, Plaintiffs allege, in relevant part, the following:

19          a.   The Site is located in Fullerton, California.

20          b.   Settling Defendant Frojen Trust has owned the site since 2001.

21          c.   Settling Defendant Colleen Frojen individually held an ownership

22              interest in the Site from approximately 1978 to 2001.

23          d.   From approximately 1980 to 2007, PCA operated as a metal

24              plating facility on the eastern portion of the Site. In the plating

25  _____

26  [1] The Robert C. Frojen and Collen Frojen Trust and affiliated sub-trusts are:
   the Frojen Family Trust UDT October 19, 2000, aka the Robert C. Frojen and
   Colleen Frojen Trust dated October 19, 2000; the Robert C. Frojen and Colleen

27  Frojen Trust (Marital Share) dated October 19, 2000; the Robert C. Frojen and
   Colleen Frojen Trust (Bypass Share) dated October 19, 2000; the Robert C. Frojen

28  and Colleen Frojen Trust (Survivor's Share) dated October 19, 2000.

operations at the Site, PCA used hexavalent chromium, cadmium, cyanide compounds, tetrachloroethene ("PCE"), and trichloroethene ("TCE").

e.   Settling Defendant Robert Winters was an owner of PCA from approximately 1997 to 2014.

f.   From approximately 1976 to 2011, Orange County Metal Processing ("OCMP") operated as a metal plating business on the western portion of the Site. OCMP was owned and operated by Manuel Reynoso. DTSC filed a complaint against Mr. Reynoso in this Court for recovery of response costs on January 26, 2022 (Case No. 8:22-cv-00136-DSF-KES).

g.   DTSC conducted inspections of the Site on August 10, 2007 and September 20, 2007.

h.   On May 24, 2012, DTSC issued an Imminent and/or Substantial Endangerment Determination for PCA, finding that hazardous substances had been released and were present in the groundwater and soil at the Site in sufficient concentrations to pose a substantial danger to public health and the environment.

i.   On May 28, 2015, DTSC approved a Feasibility Study / Remedial Action Plan ("FS/RAP") for the Site.

j.   From 2015 to present, DTSC has implemented the remedial actions identified in the FS/RAP, including soil excavation, installation of pilot-scale systems of an in-situ chemical oxidation system for treating groundwater, soil vapor extraction, and subsequent monitoring.

3.   DTSC took response actions necessary to remove and remedy the hazardous substances released and/or threatened to be released at and from the Site. DTSC's response actions included, but were not limited to, the following activities:

1  investigations of contamination at the Site; preparation and implementation of the

2  FS/RAP; enforcement/cost recovery activities; oversight; public participation; and

3  compliance with the California Environmental Quality Act. DTSC's response

4  actions were not inconsistent with the National Contingency Plan, 40 C.F.R. Part

5  300.

6      4.   As of December 2021, DTSC's unreimbursed response costs related to

7  the Site are approximately $8.3 million. These unreimbursed costs include

8  approximately $4.2 million for eastern portion of the Site where PCA operated, and

9  approximately $4.1 million for the western portion of the Site where OCMP

10  operated.

11      5.   Settling Defendants have claimed inability to pay response costs and

12  submitted financial information for DTSC's review. Settling Defendants affirm

13  under penalty of perjury that the financial information provided to DTSC is true and

14  correct. In making this determination of Settling Defendants' finances and in

15  entering into this settlement, DTSC has relied on the financial information provided

16  by Settling Defendants.

17      6.   Plaintiffs and Settling Defendants (collectively, the "Parties") agree, and

18  this Court, by entering this Consent Decree, finds, that: this Consent Decree has

19  been negotiated by the Parties in good faith; settlement of this matter will avoid

20  expensive, prolonged, and complicated litigation between the Parties; and that this

21  Consent Decree is fair, reasonable, in the public interest, and consistent with the

22  purpose of CERCLA.

23     **THEREFORE**, the Court, with the consent of the Parties to this Consent

24  Decree, hereby **ORDERS, ADJUDGES, AND DECREES**, as follows:

25  **II.   JURISDICTION**

26      7.   This Court has subject matter jurisdiction over this action pursuant to 28

27  U.S.C. § 1331, and § 113(b) of CERCLA, 42 U.S.C. § 9613(b). The Court also has

28  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367,

1    because these state law claims form part of the same case or controversy as DTSC's

2    federal law claims in that the state and federal claims arise from common facts

3    relating to release of hazardous substances and the cleanup of contamination at the

4    Site. The Court has personal jurisdiction over each of the parties to this Consent

5    Decree. Venue is proper in this district under 28 U.S.C. § 1391(b) and § 113(b) of

6    CERCLA, 42 U.S.C. § 9613(b).

7         8.   Solely for the purposes of this Consent Decree and the underlying

8    Complaint, Settling Defendants waive all objections and defenses that Settling

9    Defendants may have to the jurisdiction of the Court or to venue in this district.

10   Settling Defendants consent to, and shall not challenge, the terms of this Consent

11   Decree and this Court's jurisdiction to enter and enforce this Consent Decree.

12        9.   The Court shall retain jurisdiction over this matter for the purpose of

13   interpreting and enforcing the terms of this Consent Decree if necessary.

14   **III.  SETTLEMENT OF DISPUTED CLAIMS**

15        10. This Consent Decree resolves Plaintiffs' claims against Settling

16   Defendants in the above-captioned action. Plaintiffs agree to settlement of Settling

17   Defendants' liability in this action in exchange for consideration from Settling

18   Defendants, including payment by Settling Defendants to reimburse a portion of

19   Plaintiffs' Response Costs incurred and to be incurred at, or in connection with,

20   releases and threatened releases of hazardous substances at the Site. The Parties'

21   mutual releases of liability and the consideration for those releases are set forth

22   herein in detail below.

23        11. Nothing in this Consent Decree shall be construed as an admission by

24   Settling Defendants of any issue of law or fact or of any violation of law. Except as

25   otherwise provided by this Consent Decree, this Consent Decree shall not prejudice,

26   waive, or impair any right, remedy, or defense that Settling Defendants may have in

27   other or further legal proceeding.

28

12. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Parties.

## IV.  DEFINITIONS

13. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA, or in regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

14. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday or federal or State holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday or federal or State holiday.

15. "DTSC" or "Department" shall mean the California Department of Toxic Substances Control, and its predecessor and successor agencies. DTSC is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000 *et seq*. Under California law, DTSC is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto. DTSC is the California state agency with primary jurisdiction over the response to the release and threatened release of Hazardous Substances at, in, or from the Site. For the purposes of access to the Site or the Property, it shall include any contractors or subcontractors or other persons doing response work for or on behalf of DTSC.

16. "Effective Date" shall mean the day on which the Court enters an order approving this Consent Decree.

17. "Fair Market Value" shall mean the highest price on the date of valuation of the Property that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each

dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.

18. "Frojen Trust" shall mean the Robert C. Frojen and Collen Frojen Trust and affiliated sub-trusts, including: the Frojen Family Trust UDT October 19, 2000, aka the Robert C. Frojen and Colleen Frojen Trust dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Marital Share) dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Bypass Share) dated October 19, 2000; the Robert C. Frojen and Colleen Frojen Trust (Survivor's Share) dated October 19, 2000.

19. "Hazardous Materials" shall have the same meaning as the term is defined in California Health and Safety Code section 25260, subdivision (d).

20. "Land Use Covenant" shall means a covenant made by the owner of land or by the grantee of land, due to the presence of Hazardous Materials on the land, to do or refrain from doing some act on the land and which shall meet the requirements of California Civil Code section 14 1.

21. "Net Sale Proceeds" shall mean the gross price for which the Property is sold pursuant to this Consent Decree, less commercially reasonable brokerage commissions, closing costs, and marketing expenses.

22. "Parties" shall mean DTSC, the Toxic Substances Control Account, and Settling Defendants, and each shall be a "Party."

23. "PCA Metal Finishing, Inc.," shall mean PCA Metal Finishing, Inc., and the following entities: PCA Metal Finishing, Inc., a subsidiary of Pacific Clark Aiken Corporation, a California corporation; PCA Metal Finishing, Inc., a subsidiary of PCA Aerospace, Inc., a California corporation, PCA Metal Finishing Inc., dba Pacific Clark Aiken Corporation Metal Finishing Division, a California corporation; and any and all successors and assigns thereto. PCA Metal Finishing, Inc. is a dissolved California corporation.

24. "Property" shall mean the real property located at 1711, 1723, and 1725 E. Kimberly Avenue, Fullerton, California 92831 and 1706, 1710, 1712, 1720, 1724, and 1726 E. Rosslynn Avenue, Fullerton, CA 92831, identified by Assessor's Parcel Number 033-270-30. The Property is currently owned by the Frojen Trust.

25.  "Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by section 101 of CERCLA, 42 U.S.C. § 9601, related to release and/or threatened release of hazardous substances at, beneath, and/or from the Site, including in the soils and groundwater. Response Costs include, but are not limited to, direct labor costs; contractor, consultant, and expert costs; travel and any other out-of-pocket expenses; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances at, in, or from the Site; indirect costs; oversight costs; applicable interest charges; and attorneys' fees incurred by DTSC.

26. "Settling Defendants" shall collectively include the Frojen Trust, Colleen Frojen, individually and as Trustee of the Frojen Trust, Robert H. Winters, and PCA Metal Finishing, Inc.

27. "Site" shall mean the Property and the vertical and areal extent of the hazardous substances contamination, including contamination of surface, subsurface areas, and groundwater, that is, or has been, present at, beneath, and/or from the Property.

28. "Toxic Substances Control Account" shall mean the Toxic Substances Control Account, or "State Account," which is an account within the State of California General Fund, established pursuant to section 25173.6 of the California Health and Safety Code. Cal. Health & Saf. Code, §§ 25324, 25173.6. The Director of the Department administers the State Account. The State Account may sue in its own name (Cal. Health & Saf. Code, § 25331), and shall be a party in any action for

1  recovery of costs or expenditures incurred from the state account pursuant to the

2  Hazardous Substances Account Act. Cal. Health & Saf. Code, § 25361(a).

3  **V.    SETTLING DEFENDANTS' OBLIGATIONS**

4      29. Settling Defendants Frojen and Frojen Trust shall pay Plaintiffs

5  $2,000,000 within ninety (90) Days of the Effective Date. Settling Defendants

6  Winters and PCA Metal Finishing, Inc. shall pay Plaintiffs $1,000,000 within

7  ninety (90) Days of the Effective Date.

8      30. Settling Defendants represent and warrant that there or no liens or

9  outstanding encumbrances on the Property.

10      31. The Parties agree that the Property is a valuable asset for the purposes of

11  addressing Settling Defendants' liability for Plaintiffs' Response Costs.  Settling

12  Defendant Frojen, as trustee of the Frojen Trust, shall have one (1) year from the

13  Effective Date ("Sales Opportunity Period") to close the sale of the Property and

14  shall pay Plaintiffs the Net Sale Proceeds for the sale of the Property, pursuant to

15  the following requirements:

16          a.  Net Sale Proceeds shall mean the gross price for which the

17              Property is sold pursuant to this Consent Decree, less

18              commercially reasonable brokerage commissions, closing costs,

19              and marketing expenses.

20          b.  Settling Defendant Frojen as trustee of the Frojen Trust shall use

21              commercially reasonable efforts to sell the Property for Fair

22              Market Value and shall incur only commercially reasonable costs

23              of sale for the sale of the Property.

24          c.  Any purchase agreement and escrow instructions for the sale of

25              the Property shall require the escrow agent to pay Plaintiffs all of

26              the Net Sale Proceeds within three (3) Days of the close of

27              escrow.

28

d.  Within ten (10) Days of the close of escrow, Settling Defendant Frojen as trustee of the Frojen Trust shall provide DTSC with the Seller's final settlement statement. Within thirty (30) Days of the close of escrow, Settling Defendant as trustee of the Frojen Trust shall provide DTSC with a signed report setting forth a cash-based accounting of the calculation of the Net Sale Proceeds, i.e., showing the gross sale price, and each item deducted from same in calculating the Net Sale Proceeds.

e.  Following the close of escrow, within ten (10) Days of a written request by DTSC, Settling Defendant Frojen as trustee of the Frojen Trust shall provide all supporting documentation for the sale, the purchase and escrow documents and the escrow settlement statement to enable DTSC to audit and verify the sale transaction.

f.  Provided Settling Defendant Frojen as trustee of the Frojen Trust makes commercially reasonable efforts to sell the Property during the Sales Opportunity Period but does not sell the Property, DTSC will consider, in good faith, an extension of time to effectuate the terms of this Consent Decree provided there is no bona fide offer for purchase of the Property during the Sales Opportunity Period.

g.  After the Effective Date of the Consent Decree, Settling Defendant Frojen as trustee of the Frojen Trust, upon request of DTSC, will execute and record, or cause to be executed and recorded by any purchaser of the Property, a Land Use Covenant (substantially in the form attached as Exhibit A) that may, among other things: (a) limit use of the Property to commercial or industrial uses, unless additional response action is taken at the

Property with the approval of DTSC that would allow for additional uses of the Property from a public health perspective; and (b) protect against interference with any ongoing DTSC response actions at the Site. Settling Defendant Frojen as trustee of the Frojen Trust and any subsequent owners of the Property may request that DTSC agree to a modification of the Land Use Covenant. Neither the Settling Defendant, nor any subsequent owners, may modify the Land Use Covenant without prior DTSC written approval. Nothing in this Consent Decree is intended nor shall it excuse Settling Defendant Frojen as trustee of the Frojen Trust or any other person from obtaining any permits or other authorizations from any other governmental authority to use the Property. If Settling Defendant Frojen as trustee of the Frojen Trust sells the property during the Sales Opportunity Period, but prior to any request by DTSC to record a Land Use Covenant, Settling Defendant Frojen as trustee of the Frojen Trust shall include a provision in the terms of sale of the Property, obligating the potential purchaser or transferee to record a Land Use Covenant upon request of DTSC, in substantially similar form attached as Exhibit B, and with substantially similar terms.

h. In the event that Property is not sold within the time period specified in Paragraph 31 and as extended upon agreement by DTSC as provided in Paragraph 31(f) Settling Defendant Frojen as trustee of the Frojen Trust shall pay Plaintiffs an additional $7,000 per month until the Property is sold, unless Settling Defendant Frojen as trustee of the Frojen Trust can demonstrate, via motion, that the delay in the sale of the Property past the time period specified in Paragraph 31 and 31(f), supra, was due to

circumstances beyond Settling Defendant's control and that

Settling Defendant Frojen as trustee of the Frojen Trust took

commercially reasonable steps to sell the Property at Fair Market

Value. Upon such showing, the Court may extend the deadline

for the sale of the Property.

32. Each Settling Defendant's payment obligations under this Consent Decree shall be deemed to have been satisfied in full upon delivery to Plaintiffs of the payments due under Paragraphs 29 and 31.

33. The payments specified in Paragraphs 29 and 31 shall be made by certified or cashier's check made payable to California Department of Toxic Substance Control, and shall bear on its face both the docket number of this proceeding and the phrase "Site Codes 401605-17 and 401614-17."

    a.  The payments shall be sent to:
        Accounting Office, MS-21A
        Department of Toxic Substances Control
        P.O. Box 806
        Sacramento, CA 95812-0806

    b.  A copy of the check shall be mailed to:
        Christopher Kane
        Senior Staff Counsel
        Department of Toxic Substances Control
        Office of Legal Counsel, MS-23A
        1001 I Street
        Sacramento, CA 95814

        And e-mailed to Christopher.Kane@dtsc.ca.gov in PDF format.

34. This Consent Decree is conditioned upon full execution of the Settling Defendants' obligations in Paragraphs 29 through 33. If a Settling Defendant does not fully execute its obligations in Paragraphs 29 through 33, then this Consent Decree shall be voidable as to that Settling Defendant at the discretion of DTSC,

1  and DTSC may proceed to litigate the Complaint against the non-performing

2  Settling Defendants.

3  **VI.  ACCESS TO INFORMATION AND THE PROPERTY**

4      35. Settling Defendant Frojen as trustee of the Frojen Trust shall provide

5  DTSC full access to the Property and fully cooperate with DTSC for response

6  activities, including, but not limited to, implementation of the FS/RAP and ongoing

7  operation and maintenance activities. Any sale of the Property by Settling

8  Defendant Frojen as trustee of the Frojen Trust shall include a requirement that all

9  purchasers of the Property shall provide DTSC full access to the Property and fully

10 cooperate with DTSC for response activities, including, but not limited to,

11 implementation of the FS/RAP and ongoing operation and maintenance activities.

12     33. Within thirty (30) days of the Effective Date, Settling Defendants shall

13 provide to DTSC copies of any and all unprivileged records, documents, and

14 information within its possession or control, or that of its agents, relating to the

15 ownership, operation, or control of the Property, including but not limited to design

16 specifications, reports of construction activities, contracts, invoices, sampling,

17 analysis, chain of custody records, manifests, trucking logs, receipts, reports,

18 sample traffic routing, correspondence, easements, permits, grants of access to

19 public property, city government resolutions, the ownership, operation, or control

20 of the Site, and the purchase, storage, use, handling, generation, treatment,

21 transportation, or disposal of Hazardous Substances in connection with the Site. If

22 Settling Defendant believes it already produced all such documents, it may comply

23 with this Paragraph by sending DTSC a signed letter representing and warranting

24 that it has already produced the information required by this paragraph. Sending

25 such a letter shall not absolve Settling Defendant of its obligations under this

26 Paragraph.

27     36. Settling Defendants may assert that certain documents, records, and other

28 information are privileged under the attorney client privilege or any other privilege

13

recognized by law. If Settling Defendants assert such a privilege, they shall provide DTSC with the following information sufficient to test the assertion of the privilege: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient of the document, record, or information; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of a document, the document shall be provided to DTSC in redacted form to mask the privileged information only. Settling Defendants shall retain all records and documents they claim to be privileged until DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor.

37. If after the Effective Date Settling Defendant obtains or discovers any records, documents or information described in Paragraph 35 not previously provided to DTSC, Settling Defendant agrees to provide DTSC with copies of the additional records, documents or information within ten (10) Days of the date Settling Defendant discovers or obtains the records, documents or information.

**VIII.    COVENANT NOT TO SUE BY PLAINTIFFS**

38. Except as expressly provided in Section IX (Plaintiffs' Reservation of Rights) of this Consent Decree, Plaintiffs covenant not to sue Settling Defendants and their representatives, affiliates, successors, heirs, legatees, and assigns for civil liability for reimbursement of all or any portion of past or future Response Costs, declaratory relief, injunctive relief, or any other judicial or administrative action or relief pursuant to section 107 of CERCLA, 42 U.S.C. § 9607, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., the Carpenter

14

Presley Tanner Hazardous Substance Account Act, California Health and Safety Code section 25300 et seq., or the California Hazardous Waste Control Act, California Health and Safety Code section 25100 et seq., or nuisance or trespass, with regard to releases or threatened releases of hazardous substances related to the Site, whether known or unknown. This Covenant Not to Sue shall be revoked and deemed not effective if Settling Defendants fail to fully perform on their obligations stated in Paragraphs 29 through 33 of this Consent Decree.

35. This Covenant Not to Sue is that of Plaintiffs only and nothing in this Consent Decree is intended to, or shall, affect the rights of any other agency, board, department, or other entity of the State of California.

IX.  **PLAINTIFFS' RESERVATION OF RIGHTS**

39. <u>Claims Regarding Other Matters.</u> Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights, claims, and causes of action Plaintiffs may have against Settling Defendants with respect to all matters not expressly included within Plaintiffs' Covenant Not to Sue (Section VIII), including, but not limited to, releases or threatened releases of Hazardous Substances at, in, or from locations other than the Site.

40. <u>Reservation of Claims.</u> Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights and claims against Settling Defendants with respect to the following matters:

   a.  Failure of a Settling Defendant to meet the requirements of this Consent Decree;

   b.  Damage to natural resources, as defined in CERCLA section 101(6), 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

   c.  Liability resulting from Settling Defendants' introduction of any hazardous substance, pollutant, or contaminant to the Site after the Effective Date;

d.  Liability resulting from acts by Settling Defendants after the Effective Date that cause the exacerbation of the hazardous substance conditions existing at or from the Site;

e.  Claims based on liability arising from the past, present, or future disposal of hazardous substances at sites or locations other than the Site;

f.  Claims based on the alleged misrepresentation or omission of material facts by Settling Defendants leading to the entry of this Consent Decree; and

g.  Claims based on criminal liability.

41. Government Authority. Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended nor shall it be construed to preclude DTSC from exercising its authority under any law, statute, or regulation. Furthermore, nothing in this Consent Decree is intended, nor shall it be construed, to preclude any other state agency, department, board, or entity from exercising its authority under any law, statute, or regulation.

42. Claims Against Other Persons. Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights, claims, and causes of action Plaintiffs may have against any person or entity other than the Settling Defendants and the Settling Defendants' representatives, affiliates, successors, heirs, legatees, and assigns. Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, which DTSC may have against any person or other entity not a signatory to this Consent Decree.

43. Unknown Conditions/New Information. Notwithstanding any other provision in the Consent Decree, Plaintiffs reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order seeking to compel Settling

Defendants to perform additional response activities at the Site and/or to reimburse Plaintiffs for additional Response Costs if:

      a. After the Effective Date of the Consent Decree, Plaintiffs receive information, previously unknown to Plaintiffs, indicating that the information provided by Settling Defendants regarding their involvement at the Site, and upon which Plaintiffs relied upon in entering into the Consent Decree, is false, or in a material respect, inaccurate.

      b. Conditions previously unknown to Plaintiffs, for which Settling Defendants are liable under any statute or law, are discovered at the Site after the Effective Date, and these previously unknown conditions indicate that a hazardous substance has been or is being released at the Site or there is a threat of such release into the environment.

## X.    COVENANT NOT TO SUE BY SETTLING DEFENDANTS

44. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against Plaintiffs or their contractors, employees, or legal representatives for any costs or damages the Settling Defendants might incur or for any injuries or losses Settling Defendants might suffer as a result of their performance of the requirements of this Consent Decree. Settling Defendants further covenant not to sue and agree not to assert any claims or causes of action against DTSC or its contractors, employees, or legal representatives for any and all liability for reimbursement of all or any portion of the Settling Defendants' Response Costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., the Carpenter Presley Tanner Hazardous Substance Account Act, California Health and Safety Code section 25300 et seq., or the California Hazardous Waste Control Act, California Health and Safety Code section 25100 et

seq. for liability with regard to releases or threatened releases of Hazardous Substances at, in, or from the Site.

## XI.   EFFECT OF CONSENT DECREE AND CONTRIBUTION PROTECTION

45. With regard to claims for contribution against Settling Defendants for "Matters Addressed" in this Consent Decree, the Parties agree and the Court finds as follows:

    a. This Consent Decree constitutes a judicially approved settlement within the meaning of CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2).

    b. This Consent Decree requires that Settling Defendants pay certain costs with respect to their liability at the Site.

    c. Settling Defendants are entitled to the contribution protection provided by CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2), and by state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in Section IX (Plaintiffs' Reservation of Rights).

    d. The "Matters Addressed" in this Consent Decree include: (1) all past and future Response Costs and all other damages (with the exception of natural resource damages) incurred by or on behalf of Plaintiffs with respect to the Site; (2) all past and future Response Costs that have been and/or may be incurred by or on behalf of any other person, including any past, present, or future Site owner or operator with respect to the Site; and (3) interest on amounts referred to in (1) and (2) above.

46. The protection provided for in this Section XI is conditioned upon full compliance by Settling Defendants with their obligations in this Consent Decree. Each Settling Defendant shall receive the protection provided for in this Section XI

1   when that Settling Defendant has fully complied with its obligations in this Consent

2   Decree.

3       47. Nothing in this Consent Decree limits or impairs the right of Plaintiffs to

4   pursue any other person for unrecovered Response Costs incurred by Plaintiffs.

5   **XII. NOTIFICATION**

6       48. Notification to or communication among the Parties as required or

7   provided for in this Consent Decree shall be addressed as follows:

8       For Plaintiffs:

Farah Itani
Project Manager
California Department of Toxic Substances Control
Cypress Regional Office
5796 Corporate Avenue
Cypress, CA 90630
Farah.Itani@dtsc.ca.gov

Christopher Kane
Staff Attorney
California Department of Toxic Substances Control
Office of Legal Counsel, MS-23A
1001 I Street
Sacramento, CA 95814
Chistopher.Kane@dtsc.ca.gov

Heather Lewis
Deputy Attorney General
California Department of Justice
1515 Clay Street
P.O. Box 70550
Oakland, CA 94612-0550
Heather.Lewis@doj.ca.gov

For Settling Defendant Frojen, individual and as trustee for the Frojen Trust.:

Rick McNeil
Crowell & Moring LLP
3 Park Plaza, Suite 2000
Irvine, CA 92614
rmcneil@crowell.com

For Settling Defendants Winters and PCA Metal Finishing, Inc.:

Corrie Plant
Bick Law LLP
520 Newport Center Dr, Suite 750
Newport Beach, CA 92660
cplant@bicklawllp.com

49. Upon ten (10) Days' notice to the other Party, a Party to this Consent Decree may substitute another person for an addressee named above to receive notifications or communications as required or provided for in this Consent Decree.

**XIII.    GENERAL PROVISIONS**

50. <u>Parties Bound.</u> This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their respective representatives, successors, heirs, legatees, and assigns.

51. <u>Parties Not Bound.</u> This Consent Decree shall not apply to, be binding upon, or inure to the benefit of any party other than the Parties bound as provided in Paragraph 50. This Consent Decree shall not apply to, be binding upon, or inure to the benefit of the United States Environmental Protection Agency.

52. <u>No Rights in Other Parties.</u> Except as provided in Paragraph 50 regarding parties bound, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.

53. <u>No Waiver of Enforcement.</u> Plaintiffs' non-enforcement any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  Plaintiffs' non-enforcement of any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

54. <u>No Findings by Plaintiffs.</u> The statements of fact set forth in this Consent Decree are not intended to constitute a finding by Plaintiffs as to the risks to human health or the environment that may be posed by contamination at the Site or whether or not a nuisance condition exists at the Site. This Consent Decree does not constitute a representation by Plaintiffs that the Site, or any part thereof, is fit for any particular purpose.

55. <u>Governmental Immunity.</u> Nothing herein is intended, nor shall be construed, to limit, impair, or prejudice the governmental tort, statutory, or

1  sovereign immunities available to Plaintiffs under applicable law for their oversight
2  or other activities with respect to the Site.

3      56. <u>Integration.</u> This Consent Decree, including the exhibits and other
4  materials incorporated herein by reference, constitutes the entire agreement
5  between Plaintiffs and Settling Defendants and may not be amended or
6  supplemented except as provided for in the Consent Decree.

7      57. <u>Modifications.</u> This Consent Decree may only be modified upon the
8  written agreement of Plaintiffs and Settling Defendants and the approval of the
9  Court, or upon order of the Court after noticed motion by a Party to this Consent
10  Decree.

11      58. <u>Interpretation.</u> The Consent Decree is entered into and shall be construed
12  and interpreted in accordance with the laws of the State of California and, where
13  applicable, the laws of the United States. This Consent Decree shall be deemed to
14  have been drafted equally by all Parties hereto.

15      59. <u>Signatories.</u> Each signatory to this Consent Decree certifies that he or she
16  is fully authorized by the Party he or she represents to enter into the terms and
17  conditions of this Consent Decree, to execute it on behalf of the Party represented,
18  and to legally bind that Party to all the terms and conditions of this Consent Decree.

19      60. <u>Counterparts.</u> This Consent Decree may be executed in two or more
20  counterparts by the Parties, each of which shall be deemed an original, but all of
21  which together shall constitute one and the same instrument.

22      61. <u>Attorneys' Fees and Costs.</u> Each Party to this Consent Decree shall bear
23  its own costs, attorneys' fees, expert witness fees, and all other costs of litigation;
24  provided, however, that if Plaintiffs bring an action against Settling Defendants to
25  enforce this Consent Decree, and are successful in such action, Settling Defendants
26  shall reimburse Plaintiffs for all costs of such action, including, but not limited to,
27  attorneys' fees. This paragraph shall have no effect on the Parties' right to recover
28  these fees or costs from any third person not a party to this Consent Decree.

62. <u>Agent.</u> Settling Defendants have appointed and authorized the agents identified in Paragraph 48 to receive notices with respect to all matters arising under or relating to this Consent Decree.

**XIV.     ENTRY OF THE CONSENT DECREE**

63. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days. The Consent Decree also is subject to a public comment period of not less than thirty (30) Days. Plaintiffs may modify or withdraw their consent to this Consent Decree if comments received during the public comment period disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

64. If Plaintiffs do not modify or withdraw their consent after the public comment period is completed, Plaintiffs will move the Court for an order approving the Consent Decree. If, for any reason, the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

**IT IS SO ORDERED, ADJUDGED, AND DECREED**

DATED:  November 10, 2022

_____
Honorable Dale S. Fischer
UNITED STATES DISTRICT JUDGE